OPINION *Page 2 
{¶ 1} Plaintiffs-appellants N. Kathryn Walker, et al. appeal the decision of the Stark County Court of Common Pleas finding that applicable law requires the owners of manufactured home parks, such as Appellants herein, to provide potable water to their residents.
 {¶ 2} Defendant-appellee is the Stark County Health Department.
 STATEMENT OF THE FACTS AND CASE {¶ 3} Appellants, N. Kathryn Walker and William E. Walker, Sr., are the owners and operators of a manufactured home park, known as Hillview Mobile Home Park, located in Sugarcreek Township, Stark County, Ohio (hereinafter "Hillview"). Hillview is located within the Stark County Combined General Health District, Appellee herein, a general health district organized under Chapter 3709 of the Ohio Revised Code (hereinafter "Board").
 {¶ 4} The Board is the licensor of Hillview pursuant to R.C. § 3733.01
and OAC3701-27-01(J). R.C. § 3733.01 requires a general health district to assure compliance with R.C. § 3733.01 through R.C. § 3733.08 and the rules promulgated thereunder. R.C. § 3733.02 authorizes the public health council, pursuant to Chapter 119, to adopt rules of uniform application throughout the state governing, among other areas, the issuance of licenses for manufactured home parks; the sanitation, safety and operation of those parks.
 {¶ 5} OAC 3701-27-12 requires the operator of a manufactured home park ensure that the water system is maintained in a safe and sanitary manner so as not to create a hazard to the health of its residents. *Page 3 
 {¶ 6} Hillview therefore was required to have a water supply "from a public water system approved by the Ohio Environmental Protection Agency."
 {¶ 7} In 2001, the USEPA lowered the maximum contaminant level (MCL) of arsenic from 50 ppb to 10 ppb, and the Ohio EPA adopted those levels effective January 1, 2006. Employees of the Board were made aware by the Ohio EPA that the arsenic levels in the water supply to the residents of Hillview exceeded the maximum contaminant level (MCL) as established in OAC 3745-81-11.
 {¶ 8} On April 30, 2007, Appellants Walker were sent a letter by the Environmental Director of the Board, explaining what the problem was with the arsenic levels in Hillview's water system and advising them to correct it.
 {¶ 9} On May 17, 2007, pursuant to the authority granted under R.C. 3707 and 3709, Appellants were issued a Public Health Order by William Franks, Health Commissioner for the Board, commanding the Appellants to provide a safe alternative water source to the residents of Hillview, and to seek corrective measures to comply with Ohio EPA public water system requirements.
 {¶ 10} On May 21, 2007, Appellants were sent a notification from the Ohio EPA that they had failed to comply with OAC 3745-81-60, which requires a periodic sanitary survey of Hillview's community water system.
 {¶ 11} On May 24, 2007, Appellants were sent a letter from Ohio EPA stating that Hillview was in violation for exceeding MCL standards for arsenic (currently .010 mg/1), and that Hillview's annual average for arsenic in the first quarter of 2007 is 0.091 mg/L.
 {¶ 12} On May 21, 2007, Appellants herein filed a Verified Complaint for Declaratory and Injunctive Relief against Appellees herein. *Page 4 
 {¶ 13} Appellee Board filed an Answer and Verified Counterclaim for Preliminary and Permanent Injunctive Relief on June 6, 2007.
 {¶ 14} The trial court requested that the parties submit briefs on the issue.
 {¶ 15} The trial court entered a Judgment Entry on July 18, 2007, in favor of Appellees herein, and directed them to prepare an appropriate Judgment Entry.
 {¶ 16} The trial court filed said Judgment Entry on July 23, 2007.
 {¶ 17} It is from those Entries that Appellants have appealed, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 18} "I. TRIAL COURT ERRED TO THE WALKERS' PREJUDICE, IN FAILING TO HOLD THAT THE DEPARTMENT ACTED BEYOND ITS AUTHORITY WHEN THE DEPARTMENT REDEFINED THE STATE'S PUBLIC POLICY CONCERNING A MANUFACTURED HOME PARK OPERATOR'S OBLIGATION BY REQUIRING THE WALKERS TO "OBTAIN" IN ADDITION TO "MAINTAIN" A PUBLIC WATER SYSTEM IN ORDER FOR THEM TO QUALIFY FOR A MANUFACTURED HOME PARK LICENSE.
 {¶ 19} "II. THE TRIAL COURT ERRED TO THE WALKERS' PREJUDICE WHEN IT RULED THAT THE WALKERS MUST IMPLEMENT A PLAN TO ABATE A NUISANCE BECAUSE THE STARK COUNTY HEALTH DEPARTMENT DOES NOT HAVE THE AUTHORITY TO REGULATE THE USE OF NONPOTABLE WATER FOR CLEANING AND HYGIENIC PURPOSES OR TO DECLARE ITS USE A NUISANCE." *Page 5 
 I., II. {¶ 20} We shall address Appellants' assignments of error simultaneously.
 {¶ 21} A "public water system" is defined in OAC 3745-81-01, as:
 {¶ 22} "(FFF) "Public water system" or "PWS" means a system which provides water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen service connections or regularly serves an average of at least twenty-five individuals daily at least sixty days out of the year. Such term includes any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system, and any water supply system serving an agriculture labor camp, as defined in section 3733.41 of the Revised Code. A public water system is either a "community water system" or a "noncommunity water system."
 {¶ 23} "(1) "Community water system" or "CWS" means a public water system which serves at least fifteen service connections used by year-round residents or regularly serves at least twenty-five year-round residents.
 {¶ 24} "(2) "Noncommunity water system" or "NCWS" means a public water system that is not a community water system.
 {¶ 25} "(a) "Nontransient noncommunity water system" or "NTNCWS" means a public water system that is not a community water system and that regularly serves at least twenty-five of the same persons over six months per year. *Page 6 
 {¶ 26} "(b) "Transient noncommunity water system" or "TNCWS" means a noncommunity public water system that does not regularly serve at least twenty-five of the same persons over six months of the year."
 {¶ 27} Upon review, we find that Appellants' mobile home park falls under OAC 3701-27-12(B)(2)(a) which requires a public water system approved by the Ohio EPA.
 {¶ 28} Ohio Administrative Code § 3701-27-12 Water systems, provides:
 {¶ 29} "(A) The operator of a manufactured home park shall ensure that the water system is maintained in a safe and sanitary manner so as not to create a hazard to the health of the manufactured home park occupants.
 {¶ 30} "(B) The water supply for a manufactured home park shall be:
 {¶ 31} "(1) For portions of the park developed after the effective date of this rule:
 {¶ 32} "(a) * * *
 {¶ 33} "(b) * * *
 {¶ 34} "(2) For portions of a manufactured home park developed on or before the effective date of this rule:
 {¶ 35} (1) From a public water system approved by the Ohio environmental protection agency; or
 {¶ 36} "(2) From a private water system which meets the requirements of Chapter 3701-28 of the Administrative Code.
 {¶ 37} "* * *"
 {¶ 38} The public water system must provide water for human consumption.
 {¶ 39} OAC § 3745-81-01, defines "human consumption" as: *Page 7 
 {¶ 40} "(OO) "Human consumption" means the ingestion or absorption of water or water vapor as the result of drinking, cooking, dishwashing, hand washing, bathing, showering, or oral hygiene."
 {¶ 41} Initially, we find that Appellant's argument that the Stark County Health Department exceeded their authority in requiring Appellants' to "obtain" in addition to "maintain" a public water system to qualify for a manufactured home park license is without merit. Appellants already had a public water system at their manufactured home park and were therefore required to maintain said public water system in accordance with EPA guidelines. As the EPA had recently reduced the acceptable standard for acceptable amount of arsenic in drinking water, Appellants were required to take the appropriate measures to meet these new guidelines.
 {¶ 42} We further find that Appellants are incorrect in their assertion that the Stark County Health Department does not have the authority to regulate the use of "nonpotable water for cleaning and hygienic purposes or to declare it a nuisance."
 {¶ 43} The Stark County Health Department is authorized pursuant to the following Revised Code statute:
 {¶ 44} R.C. § 3709.21 Orders and regulations of board of generalhealth district
 {¶ 45} "The board of health of a general health district may make such orders and regulations as are necessary for its own government, for the public health, the prevention or restriction of disease, and the prevention, abatement, or suppression of nuisances. * * *."
 {¶ 46} Pursuant to the above authorization, the Stark County Board of Health had the authority to assure compliance with the following statute: *Page 8 
 {¶ 47} R.C. § 3733.10 Operator's duties; breach
 {¶ 48} "(A) A park operator who is a party to a rental agreement shall:
 {¶ 49} "(1) Comply with the requirements of all applicable building, housing, health, and safety codes which materially affect health and safety and rules of the public health council; * * *.
 {¶ 50} Pursuant to the authority contained in the foregoing Revised Code statutes and Ohio Administrative Code sections, we find that the Stark County Health Department had the authority to order Appellants to maintain the public water system at their mobile home park in accordance with current Ohio EPA regulations.
 {¶ 51} Accordingly we find Appellants' first and second assignments of error not well-taken and overrule same.
 {¶ 52} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
 Wise, J. Gwin, P. J., and Edwards, J., concur. *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs assessed to Appellant. *Page 1